**S. L. COWLEY & SONS MFG. CO., INC., Petitioner,**

v.

**ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

No. 78–1232.

United States Court of Appeals, Tenth Circuit.

Argued July 18, 1979.

Decided Feb. 26, 1980.

Michael S. Yaroschuk, Washington, D. C., for petitioner.

Patricia G. Reeves, U. S. Dept. of Justice, Washington, D. C. (with Barbara Allen Babcock, Asst. Atty. Gen., Robert E. Kopp and John M. Rogers, U. S. Dept. of Justice, David E. Menotti, Deputy Associate Gen. Counsel, and Mitchell H. Bernstein, U. S. Environmental Protection Agency, Washington, D. C., on the brief), for respondent.

Before HOLLOWAY, McWILLIAMS and McKAY, Circuit Judges.

McKAY, Circuit Judge.

This is an appeal from the cancellation by the Environmental Protection Agency (EPA) of the registration of Cowley's Original Rat and Mouse Poison, a rodenticide manufactured and distributed by S. L. Cowley & Sons Mfg. Co. (Cowley). The poison was first registered in 1948 under the then effective Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA). Registration was renewed in 1953, 1959 and 1964. Between 1966 and 1974 extensive correspondence passed between Cowley and the EPA concerning labeling, efficacy and other matters. On November 23, 1974, the EPA sent a "Notice of Intent to Cancel the Registration" of Cowley's product. The letter advised:

> A review of our records for this product establish [*sic*] that it does not meet *effectiveness* requirements. From May 1966 to February 1974 this product has failed to pass even one of twenty-three bio-assay efficacy tests against rats or mice. While Animal Biology Laboratory tests show that a single-dose liquid rat and mouse oral rodenticide should produce a minimum of 90% mortality within 72 hours to be effective, this product has produced mortality ranging from 0% to 80% and averaging only 30.4%.

Joint Appendix, at 239 (emphasis supplied).

It is clear from the record that the elaborate proceedings which followed this cancellation notice, like the notice itself, were based on an assumption by the EPA that it has independent authority to establish and

regulate minimum effectiveness standards for pesticides [1] without regard to labeling or disclosure. The proceedings resulted in a finding that Cowley failed to meet its burden of persuasion that its poison satisfied the EPA's "effectiveness" standards or that the standards were unreasonable.

If the EPA has the authority to regulate pesticide effectiveness independent of labeling or disclosure, there is nothing in the proceedings below to which this court can properly take exception. Although the EPA argues on appeal that the cancellation is sustainable on an alternative ground (as a misbranding violation), Brief for Respondent at 19 n.14, the record discloses that in both the notice and the hearings, the agency theory to which Cowley was required to respond was bottomed on an assertion of independent effectiveness authority. That assertion remains the agency's primary ground for affirmance.

The EPA's statutory authority provides: The Administrator shall register a pesticide if he determines that . . .

(A) its composition is such as to warrant the proposed claims for it; [and]

(B) its labeling and other material required to be submitted comply with the requirements of this subchapter . . . .

7 U.S.C. § 136a(c)(5). The EPA contends that this language authorized it to establish and enforce minimum standards of product effectiveness. We are unaware of any case which has resolved this issue.

■ We do not accept the interpretation of this statutory language urged by the EPA. Both the general scheme and the specific language of the sections relied on are directed to the integrity of the claims and disclosures made by the registrant. The statute's reference to "composition" is made entirely in the context of the claims made for the product. Nothing in either the scheme or the specific language hints at a broader standard.[2] Nor do we find anything in the legislative history of the stat-

ute which compels us to accept the EPA's position. Thus, the EPA's reliance on subsection (A) for general authority to set effectiveness standards is misplaced.

■ Naturally, if the product is accompanied by express or implied claims of efficacy, the agency has a duty under the statute to insure that the product satisfies those claims. In some instances, the result may be the same whether the agency charges misbranding or failure to satisfy independent effectiveness standards. However, the coincidence of result is not always assured. A registrant has a right to proper notice and to a hearing with his burden of proof based on a correct interpretation of the agency's congressionally granted authority. Because the proceedings in this case were so dominated by an erroneous interpretation of agency authority, the petitioner must be given an opportunity for a hearing predicated upon a theory of improper disclosure or labeling. *See Stearns Electric Paste Co. v. EPA*, 461 F.2d 293 (7th Cir. 1972). Such a theory may encompass a charge that express or implied efficacy claims cannot be substantiated.

Petitioner has also challenged on the merits the ninety percent efficacy standard and testing procedures utilized by the agency. It would be premature for us to attempt to resolve these issues until an appropriate record has been developed pursuant to the agency's authority over misbranding rather than its erroneously asserted authority to set effectiveness standards. A challenge has also been raised to the procedural requirements for the adoption of the standards and to the timeliness of action in the case below. We need not reach these issues in light of our disposition of this case.

REVERSED.

---

1. "Pesticide" is defined so as to include a rodenticide under FIFRA. 7 U.S.C. § 136(t), (u).

2. Subsections (C) and (D) of 7 U.S.C. § 136a(c)(5) require that in order for a pesticide

to be registered, it must also produce no unreasonable adverse effects on the environment. The EPA has made no claim that Cowley's product fails to satisfy these subsections.